CIKLIN, C.J.,
concurring specially.
Many of the cases cited by the majority opinion lead to a fundamental and central premise. The First Amendment’s constitutional protection of a free press is historical, paramount, and fundamental. It is not absolute protection ... but, as the jurisprudence of this country holds, pretty close.
I take this as an important “concurring opinion-opportunity” to briefly remind the readers of our opinion about the significance of the First Amendment to the United States Constitution — if for no other reason than to further educate those who may be interested.
As Justice Stewart opined:
That the First Amendment speaks separately of freedom of speech and freedom of the press is no constitutional accident, but an acknowledgment of the critical role played by the press in American society. The Constitution requires sensitivity to that role, and to the special needs of the press in performing it effectively.
Houchins v. KQED, Inc., 438 U.S. 1, 17, 98 S.Ct. 2588, 57 L.Ed.2d 553 (1978) (Stewart, J., concurring).
Indeed, most of the grievances enunciated by the framers of the Constitution against King George III concerned his harsh oppression caused by a general denial of basic liberties most of which were perpetrated by anti-democratic secrecy and deception. The First Amendment forthrightly tackled the King’s tyranny. As noted by Justice Black in New York Times Co. v. United States, 403 U.S. 713, 717, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971):
In the First Amendment the Founding Fathers gave the free press the protection it must have to fulfill its essential role in our democracy. The press was to serve the governed, not the governors. The Government’s power to censor the press was abolished so that the press would remain forever free to censure the Government. The press was protected so that it could bare the secrets of government and inform the people. Only a free and unrestrained press can effectively expose deception in government.
*486 Generally speaking, the press is not always accurate arid may, at times, not present a full, fair, and robust debate on important issues of the day. In a perfect America, .the circumspection employed by members of the press would consistently and without fail be commensurate with the virtually unbridled freedom that the press enjoys. That, however, has never been the case and perhaps those excesses are simply a necessary evil and the price our citizens must pay to protect the unhindered reporting of government affairs, without any fear of interference or restraint: ......
[I]n [Thomas] Jefferson’s words, “(w)here the press is free, and every man able to read, all is safe.” Any other accommodation — any other system that would supplant' private control of the press with the heavy hand of government intrusion — would make the government the censor of what the people ■may read and know.
See Miami Herald Publ’g Co. v. Tomillo, 418 U.S. 241, 260, 94 S.Ct. 2831, 41 L.Ed.2d 730 (1974) (White, J., concurring) (footnote omitted).
In her New York Times bestselling memoir, Until I Say Good-bye, the late Susan' Spencer-Wendel — a longtime journalist — wrote about her love of being a “beat reporter”:
It was a privilege to go to work each day and grow democracy, to ferret out stories no one wanted told, to be trusted to inform and, yes, entertain our readers. When someone would ask me: “Who sent you?” I loved to reply: “Well, ma’am, that-would be Thomas Jefferson.”
■ Susan Spencer-Wendel With Beet Witter, Until I Say Good-Bye 111 (2013).